575 So.2d 421 (1991)
STATE of Louisiana
v.
Michael RICHARDSON.
No. 89-KA-2034.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1991.
Writ Denied April 26, 1991.
*422 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Pamela S. Moran, Asst. Dist. Atty., New Orleans, for appellee.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
Defendant, Michael Richardson, was charged by bill of information with possession of cocaine, a violation of La.R.S. 40:967. At his arraignment on December 7, 1988 he pled not guilty. Defendant filed a motion to suppress the evidence which was denied by the trial court on December 19, 1988. On January 19, 1989 defendant waived trial by jury, and on January 20, 1989 he was tried by the trial judge who found defendant guilty as charged. Defendant was sentenced on April 24, 1989 to five years at hard labor. Defendant now appeals based on two assignments of error. We affirm.

Facts
On November 18, 1988, the Special Operations Division of the New Orleans Police Department was conducting an undercover narcotics surveillance called "Operation Crackdown" in the St. Bernard Housing Project. From about 7:30 p.m. to shortly after midnight, Officer James Daughtry observed the activity in the courtyard at the 1400 block of Milton Street at its intersection with Duplessis Street. Using a pair of high-powered binoculars, Daughtry observed what he referred to as "narcotics trafficking" by defendant and others over the course of the evening. He then saw defendant enter the back of a maroon Chevrolet which drove out of the courtyard down Milton Street.
Officer Daughtry radioed a description of defendant to the other officers in the vicinity. Defendant was described as wearing blue jeans, a gray sweatshirt and a red cap.
Officer Barry Marquez, a member of the Special Operations Division, also participated in the surveillance of this courtyard on the date in question. Between midnight and 12:30 a.m., he and several other officers who were waiting in the area converged on the courtyard. Several people in the area were ordered to lie on the ground. Officer Marquez then noticed a vehicle parked nearby and saw three men sitting in it. He ordered the occupants out of the car *423 and recognized that one of the men fit the description of the defendant given to him by Officer Daughtry.
Officer Marquez testified that as defendant exited the vehicle, he dropped a brown vial to the ground. After ordering defendant and the others to lie on the ground, Officer Marquez picked up the vial and found it contained fifteen pieces of "crack" cocaine. Defendant was then handcuffed and arrested.
We have reviewed the record for any errors discoverable by an inspection of the pleadings and proceedings and have found none.

Assignment of Error No. 1
By his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress the evidence. He argues that the officers did not have reasonable cause or suspicion to stop defendant, and therefore the subsequent seizure of the abandoned property and arrest of defendant were illegal.
Both federal and state jurisprudence, as well as La.C.Cr.P. art 215.1(A), recognize the right of a law enforcement officer to stop a person in a public place whom he reasonably suspects is committing, has committed or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983). Further, Louisiana courts have consistently held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Andrishok, supra; State v. Burnett, 513 So.2d 391 (La.App. 4th Cir.1987).
Where officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized by the police officers. If, however, property is abandoned without any prior unlawful intrusion into a citizen's right of freedom from governmental interference, then such property may be lawfully seized. State v. Andrishok, supra.
At the hearing on the motion to suppress, Officer Marquez testified that he had received information from another surveillance officer on the scene that several individuals were engaging in drug transactions at the observed location. This area was known for its high incidence of drug trafficking and was the target of a special police effort in conjunction with the federal government to crackdown on drug dealers and purchasers. Once the descriptions of the subjects believed to be engaging in drug transactions had been received from the surveillance team, Officer Marquez along with several other officers made a decision to converge on the area. The officers approached the area in plainclothes, identified themselves as police officers, and ordered several subjects, who the officers believed may have been carrying weapons, to lie on the ground. Officer Marquez stated that this was done for both the safety of the police officers, as well as for that of those in the courtyard.
While the officers were scanning the area for the subjects who fit the descriptions given to them by the surveillance team, Officer Marquez noticed three men sitting in a parked car near the courtyard. He stated that because snipers with high powered weapons are sometimes located near the area of narcotics traffic, he ordered the occupants out of the vehicle, both for their safety as well as for that of the police officers. At this point, Officer Marquez recognized defendant who exited the vehicle wearing jeans, a gray sweatshirt and a red cap as fitting the description given to him of one of the subjects involved in drug transactions earlier that night. He then noticed defendant throw down a brown plastic vial which was later found to contain the illegal substance.
We find that the police in this case had reasonable suspicion to make an investigatory stop of defendant. They had been given descriptions of several subjects who *424 were conducting drug transactions at this location, including defendant who had been observed both earlier that night as well as on several previous nights. These officers had been sufficiently informed of criminal activity in the area which led them to conduct further investigation. Testimony indicated that the officers had a legitimate safety concern in instructing the subjects in the area to lie on the ground and in ordering defendant and his companions out of the vehicle. These actions were consistent with the officers' knowledge that several drug transactions had taken place in this area known for its high incidence of illegal-drug traffic and the possibility that gunmen would be situated nearby. The reputation of an area is an articulable fact upon which a police officer may legitimately rely and which is relevant in a determination of reasonable cause. State v. Burnett, supra, 513 So.2d at 393.
Under these circumstances, we find that Officer Marquez's initial confrontation in ordering defendant out of the car which was situated in close proximity to the suspected criminal activity was the lawful exercise of their right to conduct an investigatory stop under La.C.Cr.P. art. 215.1. Defendant's voluntary abandonment of the vial of cocaine was not precipitated by any unlawful conduct by the police, and was therefore legally seized. The motion to suppress was properly denied.

Assignment of Error No. 2
By his second assignment, defendant argues that he was denied his constitutional right to a jury trial when the trial court failed to ascertain on the record whether a waiver was knowingly and intelligently made by him.
Both La. Const. Art. 1, section 17 and La.C.Cr.P. art 782 provide that cases in which punishment is necessarily confinement at hard labor shall be tried by a twelve member jury. However, a defendant may knowingly and intelligently waive this right and elect to be tried instead by the judge alone. La.C.Cr.P. art. 780.
Louisiana jurisprudence has consistently held that in order for a waiver to have been knowingly and intelligently made, the record on appeal must show some manifestation of an effective waiver. State v. Muller, 351 So.2d 143, 146 (La. 1977). The courts have further held that the preferable practice is for the trial judge to advise the defendant personally on the record of his right to trial by jury and require the defendant to waive the right personally either in writing or by oral statement in open court on the record. State v. Wilson, 437 So.2d 272 (La.1983); State v. Kahey, 436 So.2d 475 (La.1983). However, the Louisiana Supreme Court has upheld cases in which such a waiver has been made by a defendant's attorney, rather than the defendant personally, when the defendant was considered to have understood his right to a jury trial and still consented to such a waiver. State v. Phillips, 365 So.2d 1304, 1308-09 (La.1978); cert. denied, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979).
In the present case, defendant appeared personally at his arraignment, and the transcript from this hearing reflects that he was expressly informed by the trial judge of his right to a jury trial and his right to elect trial by judge. Defendant affirmatively stated at that time that he understood those rights. On the date this matter was initially set for trial, the trial court, after a bench conference with defense counsel, stated in open court that defendant had elected trial by judge. Defendant did not object to this assertion, although he was present in court at the time. This matter was continued for trial on the following day, when the trial court stated on the record at the start of trial that defendant had waived his right to trial by jury. Again, defendant was present in court at this time but made no indications that he had not agreed to proceed to trial before the judge alone.
We find no error in the determination of the trial judge that this defendant gave his informed consent to the waiver of the jury trial. The trial judge expressly informed defendant at the arraignment of his right to choose between a judge trial and a jury trial, and defendant indicated on the record that he understood these rights. Further, *425 defendant was aware that the matter was scheduled for a judge trial and did not dispute or reject the trial court's statements made on two separate occasions that defendant desired to waive his right to a jury trial. We also note that this defendant had prior experience as an accused in a criminal prosecution, at which time he pled guilty and waived his constitutional right to trial by jury. State v. Phillips, supra. Under these circumstances, we find that the waiver in the present case was knowingly and intelligently given. This assignment lacks merit.
Accordingly, for the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.