JjLEON A. CANNIZZARO, JR., Judge.
The defendant, Shawn Q. Jones, was convicted of attempted second degree murder in violation of La. R.S. 14:(27)30.1. He is appealing his conviction on the ground that he did not knowingly and voluntarily waive his right to a jury trial. For the reasons set forth below, this Court finds that the defendant did knowingly and voluntarily waive his right to a jury trial, and his conviction is affirmed.
STATEMENT OF FACTS
Shortly before midnight on August 31, 1997, the defendant shot sixteen year old Ennis Allen as Mr. Allen stood in front of his apartment door. When New Orleans *909 Police Department Detective Daniel Wharton arrived at the crime scene, Mr. Allen had already been taken to the hospital by ambulance.
Detective Wharton testified that someone at the scene told him that the person who shot Mr. Allen wanted to talk to him. Detective Wharton testified at trial that he talked to the defendant and that he read the defendant his rights before the defendant made any statements. When Detective Wharton told the defendant that he understood that the defendant wanted to talk to him about something, the defendant said that he did. Detective Wharton then asked the defendant what he wanted to talk about, and the defendant replied that he wanted to talk about the shooting. The defendant explained that he shot Mr. Allen in self-defense. According to the defendant, he encountered Mr. Allen in the hallway of the apartment complex where Mr. Allen lived. The defendant alleged that Mr. Allen 12took out a gun, that the two of them struggled over that gun, and that the gun fired during the struggle.
The defendant also explained that a week before the shooting he and Mr. Allen had argued, because the defendant’s girlfriend drank Mr. Allen’s soda. The defendant further alleged in his conversation with Detective Wharton that sometime after the argument, Mr. Allen and another person, both of whom were allegedly armed with guns at the time, had threatened the defendant. After talking with the defendant, Detective Wharton placed the defendant under arrest.
At trial. Mr. Allen testified that approximately a week before he was shot, he had gotten into a fistfight with the defendant. The fight occurred, because the defendant’s girlfriend drank Mr. Allen’s soda. Mr. Allen stated that after the fight, the defendant had threatened him by saying, “Don’t worry about living no more.”
The night of the shooting Mr. Allen was with a group of girls when he was approached by the defendant. Mr. Allen told the defendant, “Don’t worry about that argument we had.” Shortly thereafter, Mr. Allen returned to his apartment, knocked on the apartment door, and saw someone across the hallway with a gun in his hand. That person came closer and shot Mr. Allen. According to Mr. Allen’s testimony, he continued to knock on his apartment door while trying to fight off his attacker. Mr. Allen testified that when he was shot, he could not see his attacker’s face, which was covered with a mask. After he was shot, however, Mr. Allen pulled up the attacker’s mask and was able to identify the attacker as the defendant. When Mr. Allen pulled up the mask, the defendant shot Mr. Allen again. Mr. Allen testified that he was shot a total of seven times.
Monique Allen, Mr. Allen’s older sister, testified at trial that on the night of the shooting she heard three knocks at their apartment door followed by the sound |3of gunshots, and then by much louder knocks. Her brother then screamed, “Mama, mama, open this door, please.” Ms. Aden testified that she called the police and an ambulance. She further testified that while she was making the telephone calls, her mother went out the apartment door and “stretched him [Mr. Alen] out”. Ater she had completed her telephone calls, Ms. Alen went to help her mother. Ms. Alen also stated that she asked her brother who had shot him, and he said that “Shawn shot me.”
On October 10, 1997, the defendant was charged by a bill of information with attempted second degree murder. At his arraignment on December 18, 1997, the defendant pled not guilty. He was tried before a judge on July 8, 1998, and he was found guilty as charged. On July 14, 1998, Mr. Jones was sentenced to thirteen years *910 in the Louisiana Department of Correction. On July 21,1998, the defendant filed a motion for a new trial, which was denied on September 15, 1998. On October 15, 1998, the defendant filed a motion for appeal, which was granted. Mr. Jones is appealing his conviction on the grounds that the trial court did not elicit a knowing and voluntary waiver of his right to a trial by jury.
ERRORS PATENT
The sentence for attempted second degree murder was not ordered served without benefit of parole, probation, or suspension of sentence as required by La. R.S. 14:27(D)(1) and La. R.S. 14:30.1(B). La. R.S. 30.1(B) provides that “[wjhoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.” (Emphasis added.) La. R.S. 14:27(D)(1) provides that “[i]f the offense so attempted is punishable by ... life imprisonment, he shall be imprisoned at hard 14labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.”
La. R.S. 15:301.1(A) further provides as follows:
When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
Although La. R.S. 15:301.1(A) was enacted after the defendant’s crime was committed, that statute has retroactive application under State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790. In Williams the Louisiana Supreme Court stated:
In instances where the restrictions are not recited at sentencing, La.Rev.Stat. Ann. § 15:301.1 (A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Id. at p. 10; 800 So.2d at 799.
This Court notes that no objection to the defendant’s sentence was made by the state, although the sentence was more lenient than it should have been under La. R.S. 14:27(D)(1). Normally, when the state does not raise a sentencing error on appeal, this Court is inclined to let the defendant’s sentence remain as it was imposed by the trial court. The Louisiana Supreme Court, however, held in Williams that the correction of a sentence as mandated by La. R.S. § 15:301.1(A) “self-activates” and eliminates the need for the case to be remanded for correction Lof the sentence. Therefore, this Court recognizes that under the holding of the Williams case, the defendant’s sentence is at hard labor without benefit of probation, parole, or suspension of sentence.
ASSIGNMENT OF ERROR
The trial court did not elicit a knowing and voluntary waiver of the defendant’s right to a jury trial.
Both the United States Constitution and the Louisiana Constitution guarantee an *911 accused the right to a jury trial. U.S. Const, amend. VI; La. Const, art. I § 17. If the punishment that may be imposed on a defendant exceeds six months confinement, the Louisiana Constitution provides that the defendant shall be tried by a jury. However, “[ejxcept in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury.” La. Const. art.I § 17.
La.C.Cr.P. art. 780 provides in relevant part as follows:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.
B. The defendant shall exercise his right to waive trial by jury in accordance with the time limits set forth in Article 521. However, with permission of the court, he may exercise his right to waive trial by jury at any time prior to commencement of trial.
In State v. Phillips, 365 So.2d 1304 (La.1978), the Louisiana Supreme Court considered whether the defendant in that case was denied his constitutional right to a trial by jury. When the trial judge asked the defendant in Phillips to choose between a judge trial or a jury trial, the defendant’s attorney, rather than the defendant, responded that the defendant would waive his right to a jury trial. The defendant in that case argued that his right to a trial by jury could only be waived Rby him personally. In the Phillips case, the defendant was sitting beside his attorney when the trial judge asked the defendant whether he waived his right to a jury trial.
In Phillips the Court found that the defendant had not been denied his constitutional right to a jury trial. The Court found no error in the trial judge’s determination that the defendant had waived his right to trial by jury, “especially in light of the fact that the judge had informed defendant not once, but twice, of his right to choose between a judge trial and a jury trial, and that the defendant was shown to have had prior experience as an accused in the trial of a criminal prosecution.” Id. at 1309.
In State v. Wilson, 437 So.2d 272 (La.1983), the Louisiana Supreme Court again considered whether a defendant voluntarily and knowingly waived his right to a trial by jury. In Wilson, before the trial began, the defendant’s attorney advised the court that, contrary to the advice of counsel, the defendant wanted to waive his right to a jury trial. The attorney then questioned the defendant concerning his understanding of the waiver, and the trial judge accepted the waiver.
The Court stated as follows in Wilson regarding the better method for evidencing that the waiver of a jury trial was knowingly and intelligently made:
In order to protect this valuable right, as well as to prevent postconviction attacks on the waiver, the better practice is for the trial judge to advise the defendant personally on the record of his right to trial by jury and require the defendant to waive the right personally either in writing or by oral statement in open court on the record. Id. at 275.
In Wilson the defendant personally waived trial by jury by a statement in open court on the record. The Court then held that “[o]n the basis of the overall record, we conclude that defendant voluntarily and knowingly waived his right to trial by |7jury.” Id. at 276 (emphasis added). Although the Louisiana Supreme Court gives guidance on how best to evidence a defen *912 dant’s knowing and intelligent waiver of a jury trial, there is nothing in Wilson indicating that the method described is the exclusive method. The Court in that case looked to the “overall record” to determine that the waiver was made knowingly and voluntarily.
Another case in which the Louisiana Supreme Court determined that the defendant had made a knowing and intelligent waiver of the right to a jury trial was State v. Kahey, 436 So.2d 475 (1983). In that case, the Court stated as follows:
Additionally, the record contains no objection of the defendants during the defense attorney’s explanation of the waiver. Perhaps the better practice, as presented in the American Bar Association Standards, would have been for the trial court to have obtained a personal waiver by the defendants either in writing or in open court for the record. See A.B.A. Standards, Trial By Jury 1.2(b) (1968). However, we cannot say that the procedure followed in the instant case is constitutionally defective or violative of the statutory rights of the defendant, given the fact that the record clearly indicates that the option of a judge trial was a trial strategy in which the defendants acquiesced. Id. at 487 (emphasis added).
This Court has considered what constitutes a knowing and intelligent waiver of the right to trial by jury in several cases. This Court has made it clear that the preferred practice for obtaining a valid waiver of a defendant’s right to trial by jury is “for the trial judge to advise the defendant personally on the record of his right to trial by jury and require the defendant to waive the right personally either in writing or by oral statement in open court on the record.” State v. Richardson, 575 So.2d 421, 424 (La.App. 4 Cir. 1991). See also State v. Wolfe, 98-0345 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093 State v. Abbott, 92-2731 (La.App. 4 Cir. 2/25/94), 634 So.2d 911.
This Court has also found that a knowing and intelligent waiver of a defendant’s right to a jury trial can be made even if the preferred practice of | ¡¡obtaining such a waiver is not followed. In State v. Page, 541 So.2d 409 (La.App. 4 Cir.1989), this Court recognized that “[t]he Supreme Court has refused to adopt an absolute rule that no jury waiver can be effective unless the record reflects that the accused was personally informed by the judge of his right to a jury trial.” Id. at 410. In State v. Santee, 2002-0693 (La.App. 4 Cir. 12/04/02), 834 So.2d 533, this Court reiterated that “the Louisiana Supreme Court has refused to mandate this method as an absolute rule.” Id. at p. 3, 834 So.2d at 535.
This Court has also determined that the waiver of the right to trial by jury “must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused.” State v. Wolfe, 98-0345, p. 6 (La.App. 4 Cir. 4/21/99), 738 So.2d 1093, 1097. In State v. Lee, 2001-2082 (La.App. 4 Cir. 8/21/02), 826 So.2d 616, this Court, citing the Wolfe case, again found that a waiver must be established by a contemporaneous record. In Lee this Court also reiterated this Court’s long standing position that the waiver of the right to a jury trial can never be presumed.
In the instant case, the defendant asserts that the trial court did not elicit a knowing and voluntary waiver of his right to a jury trial. In the trial court’s minute entry dated July 8, 1998, however, the following item appears:
At 10:30 the jurors were escorted into the courtroom. Shortly thereafter, the defendant exercised his rights after be *913 ing informed by the eourt and consulting with his attorney and elected to 'proceed to trial by judge. The jurors were dismissed and instructed to report back to the jury room for further instructions. (Emphasis added.)
Additionally, the defendant admitted that he waived his right to a jury trial in his Motion for New Trial dated September 15, 1998. In the Motion for New Trial, the defendant stated as follows: “[Djefendant admits that he had a conversation in 19Judges chambers concerning his right to a trial by judge or jury. Defendant at that time with the advice of counsel ... selected a judge trial.” (Emphasis added).
Further, the minute entry quoted above reflects that when the defendant waived his right to a jury trial, the jurors were in the courtroom. The minute entry states that the court informed the defendant of his rights and that he waived his right to a jury trial after consulting with his attorney. After the defendant waived his right to a jury trial, the jurors were dismissed and instructed to return to the jury room. These facts certainly should have made the defendant aware that he was entitled to a jury trial.
It is clear from the overall record in this case that the defendant knowingly and intelligently waived his right to a jury trial. The defendant’s admission that he waived his right to a jury trial after a discussion of the matter with his attorney in the trial court judge’s chambers, the evidence in a minute entry in the record that the defendant was apprised of his right to a jury trial and waived it in open court, and the lack of any evidence or allegation that the defendant is not sufficiently intelligent enough to waive this right lead this Court to conclude that the defendant knowingly and intelligently waived his right to a jury trial. Because of the unique facts of the instant case, where there is an admission by the defendant that he waived his right to a jury trial, this case presents an exception to the rule set forth in the Wolfe case discussed above. Therefore, in the instant case the waiver of the defendant’s right to a jury trial is established by other contemporaneous evidence setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the defendant. It is clear from the record that the defendant did, in fact, validly waive his right to a jury trial.
I inIn the defendant’s brief he complains that his trial attorney did not provide him with effective assistance of counsel and did not properly advise him with respect to the waiver of the defendant’s right to a jury trial. The issue of the effectiveness of the defendant’s counsel is not before this court, however. If the defendant thinks he did not have effective assistance of counsel at trial, the defendant has the right to raise this issue in an application for postconviction relief.
CONCLUSION
The defendant’s waiver of his right to a jury trial was knowing and intelligent. The judgment of the trial court is affirmed.
AFFIRMED.